FILED

2014-Nov-05  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **THOMAS N. DUKE, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  2:14-CV-422-RDP** |
| **v.** | } | |
| | } | |
| **JPMORGAN CHASE BANK NATIONAL** | } | |
| **ASSOCIATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant's Motion to Dismiss Amended Complaint (Doc. # 17).  The Motion has been fully briefed.  (Docs. # 19 and 22).  In this case, the Dukes, who have undisputedly not made *any* mortgage payments for over four years, sued the holder of their mortgage because it initiated, but did not conclude, foreclosure proceedings against them.

## I.     BACKGROUND

On or about October 8, 2007, Tracey H. Duke borrowed $87,500.00 from Chase Bank USA, N.A. to finance the Dukes' residence located at 1033 Martinwood Lane, Birmingham, Alabama.  (Doc. # 16 at ¶ 4; Doc. # 17-1 at ¶ 1).  In exchange, Tracey Duke executed a promissory note (the "Note"), and both Dukes executed a residential Mortgage (the "Mortgage").  (Docs. # 17-1 and 17-2).[1]  Although Plaintiffs remain in their home, the last full mortgage payment they made was on August 10, 2009.  (Doc. # 16 at 2).

---

[1] In ruling on a Rule 12(b)(6) motion, the court focuses principally on the Complaint, but may also consider documents attached to a pleading and matters of which a court may take judicial notice. *See* Fed.R.Civ.P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). Courts may consider an exhibit "which a plaintiff refers to ... its complaint, the document is central to its claim, its contents are not in dispute, and the

Chase Bank USA, N.A. assigned the Mortgage, together with the Note and indebtedness secured by the Mortgage, to JPMorgan Chase Bank, NA, a successor to Chase Home Finance, LLC. (Doc. # 16 at ¶ 4). As a result of the Dukes' default, Chase foreclosed on the Mortgage in June 2010. (Doc. # 16 at ¶ 5; Doc. # 17-1). The 2010 foreclosure was rescinded on May 17, 2012, so that the Dukes could apply for a modification of their loan. (Doc. # 16 at ¶¶ 6, 7).

The Dukes then applied for a loan modification and, after their account was already more than thirty-eight months past due, signed a trial modification plan on December 13, 2012. (Doc. # 16-2; Doc. # 17-3). That trial modification plan required the Dukes to make three trial payments in order to qualify for a permanent loan modification. (Doc. # 17-3). The trial modification plan provided as follows:

> After all trial period payments are timely made and you continue to meet all program requirements, your mortgage would then be permanently modified. You will be required to execute a permanent mortgage modification agreement that we will send you before your modification becomes effective. Until then, your existing loan and loan requirements remain in effect and unchanged during the trial period.

(Doc. # 17-3 at 3).

According to Home Affordable Modification Program (HAMP) guidelines, the amount of the trial payments was set at approximately 31% of the Dukes' total gross monthly income as determined from documentation provided by the Dukes. (Doc. # 17-3 at 4). The trial plan further provided that "[i]f each trial payment is not received by us in the month in which it is due, this offer will end, your loan will not be modified under the terms described in this offer, and you

---

defendant attaches the document to its motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). That is the case with the Mortgage and Note and related correspondence here.

may lose eligibility for any modification programs." (Doc. # 17-3 at 3). The Dukes never made the payments. (Doc. # 19 at ¶ 25).

As of September 26, 2013, a payment of $45,961.23 was required to bring the Dukes' account current. (Doc. # 16-3 at 2).

Plaintiffs also advance other complaints about how they were treated during their period of default. For example, they complain that: (1) Defendant continued to send them communications after they engaged an attorney in this matter (*e.g.*, Doc. # 19 at ¶¶ 16, 17); (2) Defendant's attorneys initiated foreclosure proceedings after Defendant invited Plaintiffs to seek a resolution and Plaintiffs requested a loan modification (Doc. # 19 at ¶¶ 6-10); and (3) Defendant offered a loan modification which would have required a greater monthly payment than that required by Plaintiffs' original mortgage (Doc. # 19 at ¶¶ 20, 21, 24). Plaintiffs particularly complain that Defendant informed Plaintiffs that they were not eligible for a loan modification. (Doc. # 19 at ¶¶ 27, 28). Plaintiffs allege that Chase had previously "promised [the Dukes] that they would be entitled to a modification," "indicated a willingness to once again modify [the Dukes'] loan," and "agreed to modify [the Dukes'] mortgage. (Doc. # 16 at ¶¶ 7, 10, & 16). The documents Plaintiffs allege evince these promises contain the following conditional language:

- Based on your individual financial situation, we *may* be able to reduce your existing monthly payment amount. … all workout options *require the approval* of Chase management, and you *must meet the workout criteria* to qualify for the assistance. … *no guarantees can be made* …

(Doc. # 16-1 at 4) (emphasis added).

- Chase Home Finance LLC is writing to confirm receipt of your recently submitted *request* for a modification under the Making Home Affordable ('MHA') program.

This program *can* help homeowners stay in their homes and avoid foreclosure by giving eligible borrowers a modified set of loan terms that promotes long-term affordability.  *If you meet the eligibility criteria*, including submitting all of the required documentation, we will offer you a Trial Period Plan.  The monthly trial period payments will be based on the income documentation that you provide.  They will be an estimate of what your payment will be if we are able to modify your Loan under the terms of the program. … In order to qualify for the MHA program, *you will need to … make timely monthly trial period payments* …

(Doc. # 16-1 at 8) (emphasis added).

- I've discussed your letter with my client and I think you may have identified a framework for *potential* resolution of the issue, namely a framework which involves some form of loan modification with potential credits due to your clients as well *as some form of cash payment*.  Accordingly, I am *hopeful* that we will be able to resolve this issue between our clients. … After my client has then reviewed this information, they will be in a position to *respond to your offer* with specific terms.

(Doc. # 16-1 at 10)  (emphasis added).

- Chase *may be able* to help make your mortgage more affordable if you are having difficulty making your payments.  You *could be eligible* to take advantage of the Home Affordable Mortgage Program, part of a federal initiative to help homeowners. … Once we receive all of your documentation we'll *determine if you are eligible* for the program.  If you are, we'll send you a letter with details about your new, affordable mortgage payment – and you will start paying that new amount during a trial period.  *If you make those trial payments on time and fulfill all the other program conditions*, we will offer you a permanent modification to keep your payments low.

(Doc. # 16-1 at 12) (emphasis added).

- You are approved to enter into a *trial period plan* under the Home Affordable Modification Program.  This is the *first step toward qualifying* for more affordable mortgage payments.  … *After all trial period payments are timely made and you continue to meet all program eligibility requirements*, your mortgage would then be permanently modified. ... Until then, your existing loan and loan requirements remain in effect and unchanged during the trial period.  *If each trial payment is not received by us in the month in which is due, this offer will end, your loan will not be modified under the terms described in this offer, and you may lose eligibility for any modification programs.*

(Doc. # 16-2 at 2) (emphasis added).

- We are writing to give you important, time-sensitive information about your past-due mortgage loan payment because your property is close to being referred to foreclosure. … *The date of the last full payment was August 10, 2009*.  If your circumstances have changed, if you believe that *your application for a modification was denied* in error, or *if you would like to discuss any alternative to foreclosure, including a loan modification*, please contact us immediately.

(Doc. # 16-3, dated September 26, 2013).

## II.   STANDARD OF REVIEW

In most instances, the Federal Rules of Civil Procedure require only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Nevertheless, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The complaint must include enough facts "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  To be plausible on its face, the claim must contain enough facts that "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

The court must construe pleadings broadly and resolve inferences in a plaintiff's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006). However, the

court need not accept inferences that are unsupported by the facts asserted in the complaint. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). Ultimately, the well-pleaded complaint must present a reasonable inference from the facts it alleges that show a defendant is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). To survive Counter-Defendants' Motion, the allegations of Plaintiffs' second amended counterclaim must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1949.

## III.   ANALYSIS

Plaintiffs' First Amended Complaint asserts the following claims: (1) Negligence, Wantonness and/or Willfulness, (2) Wrongful Foreclosure, (3) Misrepresentation and Fraud, (4) Outrageous Misconduct, (5) Breach of Contract, (6) Injunctive Relief.   (Doc. # 16).   For the reasons discussed below, each of these claims is due to be dismissed.

### A.   Plaintiffs' Negligence, Wantonness and/or Willfulness Claim[2]

Count I of Plaintiff's Complaint fails to state a viable claim.   *McClung v. MERS, Inc.*, No. 11-3621, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012); *Blake v. Bank of America, N.A.*, 845 F.Supp. 2d 1206 (M.D. Ala. 2012).   Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by a contract." *McClung*, 2012 WL 1642209, at *7 (citing *Blake*, 845 F.Supp.2d at 1210).   "[A] negligent failure to perform a contract . . . is but a breach of the contract." *McClung*, 2012 WL 1642209, at *7 (quoting *Blake*, 845 F.Supp.2d at 1210); see also *Barber v. Bus. Prods. Ctr., Inc.*, 677 So.2d 223, 228 (Ala. 1996), *overruled on other*

---

[2] Claims alleging wantonness are analyzed similarly to negligence claims, as a duty is required for both types of claims. *See, e.g., Lilya v. Greater Gulf State Fair, Inc.*, 855 So.2d 1049, 1056 (Ala. 2003). Additionally, wantonness is defined as "reckless indifference to the consequences." *Smith v. Davis*, 599 So.2d 586, 588 (Ala. 1992). Thus the court analyzes claims willfulness and wanton conduct as one claim. *See id.*

*grounds by White Sands Grp., LLC v. PRS II, LLC*, 32 So.3d 5 (Ala.2009) ("a mere failure to perform a contractual obligation is not a tort"). "A tort claim can only be asserted when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 WL 1642209, at *7 (citing *Blake*, 845 F.Supp.2d at 1210). It follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing." *Id.* (dismissing Plaintiff's claim for negligent, careless, and wanton mortgage servicing) (citing *Blake*, 845 F.Supp.2d at 1210).

Any obligations Defendant owed to Plaintiffs arose from the mortgage agreement, note, and to the extent such a document exists, a loan modification agreement, not from the duty of reasonable care generally owed to members of the public. The court concludes that, because all of the duties Defendants allegedly breached are based on contractual agreements between the parties, and because Alabama law does not permit Plaintiff to assert a tort claim against Defendants for their purported breach of a contract, Plaintiff's claims in Count I are not legally cognizable.

### B.    Plaintiffs' Wrongful Foreclosure Claim

Plaintiffs allege that Defendant "used its power of sale to oppress Mr. and Mrs. Duke." (Doc. # 16 at ¶ 18). However, as Plaintiffs admit, no foreclosure took place. Rather, they allege they were damaged by an "attempted foreclosure." (Doc. # 16 at ¶ 21).

Under Alabama law, a "mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan*, 607 So.2d 180, 182 (Ala. 1992). In *Hardy v. Jim Walter Homes, Inc.*, 2007 WL 174391

(S.D.Ala. 2007), the court was faced with a claim of wrongful foreclosure in the absence of a foreclosure sale, and in that context analyzed the parameters of a wrongful foreclosure claim under Alabama law. As the *Hardy* court held:

> Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale. A plain reading of [the] legal standard [enunciated in Reeves ] strongly suggests that it cannot, and that the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling.

*Id.* at *6. Based on that analysis, the court dismissed the claim for wrongful foreclosure under Rule 12(b)(6) for failure to state a claim. *Id.* This court agrees with the *Hardy* court's analysis of Alabama law. *See Vance v. Ocwen Financial Corp.*, 2012 WL 2036412, at *2 (N.D.Ala. 2012); *McClung v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 1642209, at *4 (N.D.Ala. 2012). Accordingly, in order to state a claim for wrongful foreclosure, a foreclosure sale must have actually taken place. *ECP Financial II LLC v. Ivey*, 2013 WL 6330936, at *3 (N.D.Ala. 2013); *Buckentin v. SunTrust Mortg. Corp.,* 928 F.Supp.2d 1273, 1282-83 (N.D.Ala. 2013); *Hardy*, 2007 WL 174391, at *6;  Here, because no foreclosure sale has occurred,[3] and even Plaintiffs' own allegations do not plausibly support an inference that any foreclosure proceedings were used for any purpose other than to secure Plaintiffs' unpaid debt, Plaintiffs' wrongful foreclosure claim fails to state a viable claim.

---

[3] Plaintiffs' Complaint was filed on January 30, 2014.  (Doc. # 1-1 at 3).  "The statute of limitations to set aside a sale for wrongful foreclosure, codified in Ala.Code § 6–9–147, is actually two years."  *Givianpour v. Citizens Trust Bank*, 2013 WL 839922 *2 (N.D.Ala. 2013) (citing *Browning v. Palmer*, 4 So.3d 524, 528 Ala.Civ.App. 2008)(in turn citing *Garris v. Federal Land Bank of Jackson*, 584 So.2d 791, 795 (Ala. 1991))). Therefore, any wrongful foreclosure claim regarding the 2010 rescinded foreclosure is time barred.

### C.        Plaintiffs' Misrepresentation and Fraud Claim

In most cases, a complaint adequately states a claim of relief by providing "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). Complaints (as well as counterclaims) that allege fraud, however, are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the circumstances constituting fraud be plead with particularity.   Fed.R.Civ.P. 9(b). Alleging fraud with particularity requires that the plaintiff set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted but quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Techs., Inc*., 112 F.3d 175, 179 (5th Cir. 1997)); *see also Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994) ("Federal Rule of Civil Procedure 9(b) requires that fraud be pleaded with specificity. The plaintiff's complaint must allege the details of the [defendant's] allegedly fraudulent acts, when they occurred, and who engaged in them.").  Therefore, regardless of its type, fraud claims must be supported by more than generalized allegations that the defendant acted fraudulently.

In Count III of the First Amended Complaint, Plaintiffs allege that Defendant made the following misrepresentations: (1) that Defendant "would modify their loan in order to assist them in making their payments…"; (2) "that [the] modifications would lower the Dukes' monthly payments"; and (3) that Defendant "wanted to work with [the Dukes] to help them keep their home" and "would do everything [it] could to keep the Dukes in their home." (Doc. # 16 at ¶¶ 25-28).  Plaintiffs allege that they relied on these representations.

As a general rule, "a plaintiff's reliance on the representations of a defendant is unreasonable when the plaintiff was in possession of documents the plaintiff could have read that were inconsistent with the statements on which the plaintiff alleges he relied." *AmerUS Life Ins. Co. v. Smith*, 5 So.3d 1200, 1209-10 (Ala. 2008).  "[T]he right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests." *Torres v. State Farm Fire & Cas. Co.*, 438 So.2d 757, 759 (Ala. 1983).  "[I]it is almost never reasonable for an individual to ignore the contents of documents given him or her in association with a transaction." *Alfa Life Ins. Corp. v. Colza*, 2014 WL 1874703, at *10 (Ala. 2014).

As evidenced by the correspondence Plaintiffs received from Defendants, any alleged "promises" made by Defendant regarding modification were always conditioned on prerequisites Plaintiffs would have to satisfy to remain in their home.  Plaintiffs were also reminded that there were no guarantees.  The documents given to Plaintiffs stated the following:

- Based on your individual financial situation, we *may* be able to reduce your existing monthly payment amount. … all workout options *require the approval* of Chase management, and you *must meet the workout criteria* to qualify for the assistance. … *no guarantees can be made* …

(Doc. # 16-1 at 4) (emphasis added).

- Chase Home Finance LLC is writing to confirm receipt of your recently submitted *request* for a modification under the Making Home Affordable ('MHA') program. This program *can* help homeowners stay in their homes and avoid foreclosure by giving eligible borrowers a modified set of loan terms that promotes long-term affordability. *If you meet the eligibility criteria*, including submitting all of the required documentation, we will offer you a Trial Period Plan. The monthly trial period payments will be based on the income documentation that you provide. They will be an estimate of what your payment will be if we are able to modify your Loan under the terms of the program. … In order to qualify for the MHA program, *you will need to … make timely monthly trial period payments …*

(Doc. # 16-1 at 8) (emphasis added).

- I've discussed your letter with my client and I think you may have identified a framework for *potential* resolution of the issue, namely a framework which involves some form of loan modification with potential credits due to your clients as well *as some form of cash payment*. Accordingly, I am *hopeful* that we will be able to resolve this issue between our clients. … After my client has then reviewed this information, they will be in a position to *respond to your offer* with specific terms.

(Doc. # 16-1 at 10)  (emphasis added).

- Chase *may be able* to help make your mortgage more affordable if you are having difficulty making your payments. You *could be eligible* to take advantage of the Home Affordable Mortgage Program, part of a federal initiative to help homeowners. … Once we receive all of your documentation we'll *determine if you are eligible* for the program. If you are, we'll send you a letter with details about your new, affordable mortgage payment – and you will start paying that new amount during a trial period. *If you make those trial payments on time and fulfill all the other program conditions*, we will offer you a permanent modification to keep your payments low.

(Doc. # 16-1 at 12) (emphasis added).

- You are approved to enter into a *trial period plan* under the Home Affordable Modification Program. This is the *first step toward qualifying* for more affordable mortgage payments. … *After all trial period payments are timely made and you continue to meet all program eligibility requirements*, your mortgage would then be permanently modified. ... Until then, your existing loan and loan requirements remain in effect and unchanged during the trial period. *If*

> *each trial payment is not received by us in the month in which is due, this offer will end, your loan will not be modified under the terms described in this offer, and you may lose eligibility for any modification programs.*

(Doc. # 16-2 at 2) (emphasis added).

- We are writing to give you important, time-sensitive information about your past-due mortgage loan payment *because your property is close to being referred to foreclosure.* … The date of the last full payment was August 10, 2009. *If your circumstances have changed, if you believe that your application for a modification was denied in error, or if you would like to discuss any alternative to foreclosure, including a loan modification, please contact us immediately.*

(Doc. # 16-3, dated September 26, 2013) (emphasis added).

Plaintiffs appear to ask the court to infer that Defendants acted fraudulently merely because their loan modification efforts were unsuccessful; but that, quite simply, is an insufficient basis on which to state a fraud claim. *Goodyear Tire & Rubber Co. v. Washington*, 719 So.2d 774, 776 (Ala. 1998) ("The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud."). Because Plaintiffs have pled that they were in possession of documents which they could have read and are inconsistent with the statements on which Plaintiffs alleges they relied, any alleged reliance was unreasonable as a matter of law. *AmerUS Life Ins. Co.*, 5 So. 3d at 1209-10 (Ala. 2008).

### D.     Plaintiffs' Outrageous Misconduct Claim

The Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances. As a consequence, [the Alabama Supreme Court] has held in a large majority of the outrage cases reviewed that no jury question was presented." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala. 1993) (citing multiple cases). In fact, as the Alabama Supreme Court

12

recently explained, the tort of outrage is "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Little v. Robinson*, 72 So.3d 1168, 1172 (Ala. 2011) (quoting *Potts v. Hayes*, 771 So.2d 462, 465 (Ala.2000)).

Plaintiffs' allegations are simply not comparable to the three contexts in which the Alabama Supreme Court has permitted outrage claims to proceed.  Unsurprisingly, several federal courts have dismissed outrage claims based on similar allegations of mortgage servicing deficiencies. *See, e.g. Costine v. BAC Home Loans*, 946 F.Supp.2d 1224, 1236 (N.D. Ala. 2013); *Jackson v. Countrywide Home Loans, Inc*., 2012 WL 777180, at *8 (M.D. Ala. Mar. 7, 2012) ("Plaintiff's tort of outrage claim, which is related to Defendants' alleged debt collection efforts and which does not fall into one of the presently recognized contexts in which a tort of outrage claim is appropriate, is due to be dismissed.").

There is simply nothing outrageous about a lender exercising its contractual rights under a note and mortgage against parties who have failed to perform under those documents, *i.e.,* failed to make payment on their mortgaged home.  Nor is there anything outrageous about a lender refusing to modify a loan where the borrower fails to comply with the terms of a reasonable loan modification.  For these reasons, Plaintiffs' outrage claim is due to be dismissed.

### E.      Plaintiffs' Breach of Contract Claim

Plaintiffs' breach of contract claim alleged that (1) "Defendant offered Mr. and Mrs. Duke a *potential* modification which they accepted."  (Doc. # 16 at ¶ 40) (emphasis added). "Defendant began to *negotiate* modification terms and agreed not to foreclose on Mr. and Mrs.

Duke's home."  (Doc. # 16 at ¶ 41) (emphasis added).  Defendant breached said agreement by attempting foreclosure on the Dukes' home while Defendant had agreed to modify the loan." (Doc. # 16 at ¶ 42).

Plaintiffs have failed to properly state a contract claim.  The elements of a valid contract include: "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer*, 29 So.3d at 880 (internal quotations omitted but quoting *Ex parte Grant*, 711 So.2d 464, 465 (Ala. 1997) (in turn quoting *Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt.*, 622 So.2d 1283, 1289 (Ala. 1993))).  "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

To the extent that Plaintiffs allege that Defendant breached a loan modification agreement, that claim would be barred by the Alabama Statute of Frauds, which provides that an "agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000" must be evidenced by a writing or it is void. Ala.Code. § 8-9-2(7); *see Coleman v. BAC Servicing*, 104 So.3d 195, 206 (Ala.Civ.App. 2012) (alleged oral misrepresentation that foreclosure would not take place violated the statute of frauds); *Mortensen v. MERS*, 2010 WL 5376332, at *6 (S.D. Ala. 2010) (finding that an alleged agreement to modify a mortgage loan must comply with the Statute of Frauds).   Plaintiffs have not alleged

14

that the agreement not to foreclose was made in writing.  Therefore, a claim of a breach of such agreement is barred as a matter of law.

In addition, Plaintiffs own allegations make plain that not all of the terms of the agreement had been settled upon by the parties.  For example, Plaintiffs have alleged that they accepted a *potential* modification and that they *began to* negotiate the terms of the modification.  Although they allege one term of the purported agreement, their own allegations establish that the terms were not complete.  "A contract that 'leav[es] material portions open for future agreement is nugatory and void for indefiniteness." *Macon Cnty. Greyhound Park, Inc. v. Knowles*, 39 So.3d 100, 108 (Ala. 2009); see also *White Sands Group, L.L.C. v. PRS II, L.L.C*, 998 So.2d 1042, 1051 (Ala. 2008).  Because Plaintiffs allege that material terms were left open, the purported agreement is void for indefiniteness.

Moreover, Plaintiffs allegations themselves establish that even an agreement not to foreclose was never formed.  Defendant offered Plaintiffs a trial period plan requiring certain payments to be made on time.  (Doc. # 17-3 at 3).  Plaintiffs have specifically alleged that they did not accept this offer.  (Doc. # 16 at ¶ 9).  Moreover, even if they had, Plaintiffs admit facts establishing a failure to perform on their part: the Dukes never made any payments whatsoever – under a loan modification or otherwise.  (Doc. # 19 at ¶ 25).  Thus, Plaintiffs have failed to plead the second element of a breach of contract claim: the plaintiffs' performance under the contract.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Amended Complaint (Doc. # 17) is due to be granted.

Furthermore, Plaintiffs' Amended Complaint is due to be dismissed with prejudice.  The court notes that Plaintiffs had the opportunity to amend their Complaint *after* Defendant had filed a previous motion to dismiss – and took advantage of it.  Thus, the current iteration of the Complaint allowed Plaintiffs the opportunity to cure the deficiencies set forth in Defendant's initial Motion.  The court is not obligated to provide a claimant endless bites at the proverbial apple. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("Upon dismissal pursuant to Rule 12(b) (6), [a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").  Moreover, their pleadings to this point show that any further amendment to the Complaint would be futile.

A separate order will be entered.

**DONE** and **ORDERED** this November 5, 2014.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE